**STATE of Missouri, Plaintiff-Respondent,**

v.

**Walter VALENTINE, Defendant-Appellant.**

**No. 34866.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 16, 1973.

Shaw & Howlett, Terry J. Flanagan, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty. and David P. McDonald, Asst. Circuit Atty., St. Louis, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

A substitute information in lieu of an indictment charged Walter Valentine, defendant, with robbery in the first degree by means of a dangerous and deadly weapon; it also alleged prior felonies pursuant to section 556.280, RSMo 1959, V.A.M.S. A verdict of guilty as charged was found by the jury; and the court entered judgment upon the verdict and sentenced defendant to the custody of the Department of Corrections for twenty years after defendant's motion for a new trial was denied, he appealed. We affirm the trial court's entry of judgment on the jury verdict.

On January 28, 1971, between the hour of 6:00 and 6:30 P.M., Joma's Liquor Store in the City of St. Louis was held up. Present at the time of the robbery were Mr. Benjamin Taylor, an employee, and two customers. All were ordered to lie on the floor, and the robber took approximately four hundred forty-one dollars ($441.-00), the property of Joseph Pendino, the owner. Only Benjamin Taylor testified as an occurrence witness. Mr. Taylor described the robber as a well dressed black man, between twenty to twenty-five years old, six feet tall, short hair, and who weighed approximately one hundred seventy pounds. Mr. Taylor said that since the robber wore a mask and had no hat on his head the only part of his face visible was from the bridge of his nose upward. He further testified after the defendant's face was masked by a piece of black carbon paper in court that the eyes, head, forehead were identical to those of the robber and that there was a strong resemblance between the robber and the defendant.

In any event the defendant later made a full confession which the trial court found was made freely, voluntarily, knowingly and with understanding; and that defendant knew the full consequence of his act, after having been given his Miranda warning.

During the direct examination of Mr. Pendino the following occurred which is defendant's sole claim of error:

"Q(Mr. McDonald) Do I understand that you saw him at the Police Station?

"A(Mr. Pendino) They had a *line-up*. (Emphasis ours.)

"MR. FLANAGAN: I want to object, due to our pre-trial motions the State's attorney conveyed to me there were no lineups would (sic) be introduced. On that basis I think it prejudices my client in such a way I would ask for a mistrial.

"MR. McDONALD: What I stated prior to the beginning of the trial was *this defendant was not viewed in a line-up in connection with the robbery* of January 28th. It certainly was not my intention to say he saw him in a line-up. I wasn't aware he was going to say it . . . ." (Emphasis ours.)

Thereafter, the court sustained the defendant's objection, but overruled the request for a mistrial. In addition the court instructed the jury to disregard the witness's last answer. To put the incident into proper perspective, first, Mr. Pendino did not witness the robbery nor was he present in the store at the time of the occurrence; and secondly, the answer made by him was unresponsive to the question; and lastly, no further reference to "lineup" was made again during the course of the trial. Defendant seizes upon this incident claiming that the trial court committed prejudicial error in not granting his request for a mistrial: he says that the bald reference to a "lineup" raised the specter of other crimes as well as establishing the identity of defendant as the perpetrator of other foul deeds. Thus this reference to a lineup places before the jury evidence of other crimes. State v. Hancock, Mo., 451 S.W. 2d 6; and State v. Tillman, Mo., 454 S.W. 2d 923.

In the Hancock case, supra, the defendant was charged with burglarizing Bill's Toggery store. At the time of his arrest in the trunk of the car were sundry items stolen from other places. The trial court, over defendant's objections, permitted these items not only to be identified, but also allowed into evidence testimony that these items were stolen in other incidents which were unrelated to Bill's Toggery store. Obviously, this was error, but we fail to see the nexus between that case and the case at hand. The Tillman case, supra, also states the general rule that evidence of independent crimes, and unconnected with the charge that the accused is being tried for is inadmissible; it being incom-

petent to prove one crime by proving another. While we adhere to the rule pronounced in both of the cited cases, we fail to see its relevancy in the instant case. Even defendant concedes that no references were made to any specific crimes. Yet he infers that the reference to the fact that the police had a lineup would create the inference that a lineup was being held in connection with some unidentified crime and that defendant by his very presence was suspected of being the perpetrator of the crime.

Members of the Bar from time immemorial recognize that the trial arena is not always readily controllable. Frequently, unannounced like the ghost of Banquo, witnesses, parties, and even at times unidentified spectators make unsolicited unresponsive, and unrehearsed remarks. When these debacles occur the trial court, always bearing in mind that the quality of the trial must never be sacrificed for speed of case movement, is called upon to measure the extent to which the unseasonable remarks made may adversely influence the outcome of the trial. To correct the alleged injury, the trial court may sustain the objection, if made; or act upon its own motion if none is forthcoming. And to further enervate the poison, instruct the jury to disregard the answer. But where the poison, in the discretion of the court, is so invidious and odious as to reasonably preclude the defendant from a fair hearing, then the court must, if requested, grant a mistrial. On the other hand, it is not every supposed wrong or error which occurs that requires the granting of a mistrial. A mistrial is a drastic remedy, and should be granted only under extraordinary circumstances. State v. James, Mo., 347 S.W.2d 211. In State v. Nolan, Mo., 423 S.W.2d 815, 818, our Supreme Court set forth the following guidelines:

" * * * Stated another way, a mistrial should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way. For this reason the declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court who observed the incident giving rise to the request for a new trial, and who is in a better position than an appellate court to evaluate the prejudicial effect and possibility of its removal short of a mistrial . . . The function of an appellate court . . . is to determine whether, as a matter of law, the trial court abused its discretion in refusing to declare a mistrial."

Here, we find the answer was unprompted by the State; that the reference to a lineup was singular; that the court promptly sustained the defendant's objection, and recorded its further disapproval by immediately instructing the jury to disregard the witness's answer. We find nothing in the answer made in reference to a lineup that was so impressive that its prejudicial effect, assuming without deciding defendant's conclusion to have been correct, could not have been corrected by sustaining the objection and instructing the jury to disregard the answer. State v. Camper, Mo., 391 S.W.2d 926, 928.

In State v. Scarlett, Mo., 486 S.W.2d 409, a police officer while testifying to the finding of narcotic drugs in a purse he was searching, volunteered additional information that the bag contained a pistol. In that case the reference to another crime was direct, and yet the court held that the sustention of defendant's objection, coupled with an instruction to the jury to disregard the testimony about the pistol was adequate, and that it was not error to deny the request for a mistrial. We hold that the action taken by the trial court which had an opportunity to observe the incident in context was not error, and that the court properly exercised its discretion in refusing a mistrial.

We find that defendant was present and represented by counsel throughout the trial and both were present on arraignment and at time of allocution and sentencing. We have reviewed the record proper as re-

quired by Rules 28.02 and 28.08 V.A.M.R. and find the substituted information, verdict, judgment and sentence to be in proper order.

Judgment affirmed.

DOWD, C. J., and WEIER, J., concur.